IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA VINCENT WALSH,                                      No. 2:18-cv-00112-HZ

              Plaintiff,                                      OPINION & ORDER

      v.

COLETTE PETERS, MICHAEL GOWER
BRAD CAIN, JASON BELL, JUDY
GILMORE, WILLIAM KING, MAHMOUD
ALY, MATTHEW TURNER, MATTHEW
LYONS, JESSEE SCOTT, and MONICA
LANDAVERDE,

              Defendants.

Joshua Vincent Walsh
Oregon State Penitentiary
2605 State Street
Salem, OR 97310

      Pro Se Plaintiff

Michael R. Washington
Senior Assistant Attorney General
OREGON DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, OR 97301

      Attorney for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Pro Se Plaintiff Joshua Vincent Walsh brings this civil rights action under 42 U.S.C. § 1983 against Defendants Colette Peters, Michael Gower, Brad Cain, Jason Bell, Judy Gilmore, William King, Mahmoud Aly, Matthew Turner, Matthew Lyons, Jessee Scott, and Monica Landaverde. Plaintiff alleges Defendants violated his Eighth Amendment rights by failing to allow Plaintiff an opportunity to decontaminate after secondary exposure to chemical agents. Plaintiff also alleges that Defendants engaged in a civil conspiracy to violate Plaintiff rights by training or allowing their staff to decontaminate Plaintiff with hot water. Plaintiff and Defendants now both move for summary judgment. Plaintiff also moves for sanctions against Defendants. For the reasons below, the Court denies Plaintiff's motion for summary judgment and motion for sanctions, and grants in part and denies in part Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff entered the custody of the Oregon Department of Corrections ("ODOC") on August 30, 2013, and was housed at Snake River Correctional Institution ("SRCI") from September 25, 2013, to March 7, 2018. King Decl. ¶ 3, ECF 67. At the time of the events at issue here, Defendants Scott and Lyons were correctional officers employed at SRCI. Am. Compl. at 2, ECF 43. Defendants Turner and Aly were correctional sergeants supervising the Disciplinary Segregation Unit ("DSU") at SRCI. Am. Compl. at 2. Defendant King was a correctional lieutenant at SRCI supervising the DSU. Am. Compl. at 2. Defendants Gilmore and Bell were both assistant superintendents at SRCI. Am. Compl. at 2–3. Defendant Cain was the superintendent at SRCI, and Defendant Gower was the Assistant Director of ODOC. Am. Compl. at 3. Defendant Peters was the Director of ODOC. Am. Compl. at 3.

Between 6:25 PM and 7:45 PM on November 18, 2017, an extraction team deployed chemical agents—"OC/CS spray"—in the SRCI DSU to remove four inmates from three different cells. King Decl. ¶¶ 5–6, Att. 2 at 10–11. Prior to deploying the OC/CS spray, Defendant King requested that the physical plant deactivate the air handlers on the unit to minimize secondary exposure. King Decl. ¶ 6. But, at some point before the cell extractions were complete, the air handlers were erroneously turned back on. King Decl. Att. 2 at 12. Plaintiff recalls yelling at Defendant King that fumes were entering his cell and the vents were not shut off soon after Defendants deployed the spray during the first extraction. Am. Compl. Ex. 1 ("First Walsh Decl."). Defendant King allegedly looked at Plaintiff but otherwise ignored him. *Id.* According to Plaintiff, the vents remained on during the second extraction. *Id.* Plaintiff continued to "scream" at Defendant King about the vents, at which point Defendant King spoke with Plaintiff and told him he would have the vents turned off. *Id.* During the final extraction, however, the vents remained on, and Plaintiff once again notified Defendant King but was ignored. *Id.* Plaintiff also asserts that he complained to other correctional officers that he was "burning" and wanted to decontaminate, but an officer told him to "stop asking." *Id.*

By contrast, Defendant King states that he was not notified of inmate concerns over the air circulation until after the last cell extraction was complete. King Decl. ¶ 7. After he discussed these concerns with Plaintiff, he asked the Special Housing Control Officer to contact the Physical Plant to confirm that the system was deactivated. *Id.* The officer reported back to Defendant King that the air "had just been turned back on" and that she had instructed staff to turn the system back off immediately. *Id.* Defendant Turner—the officer in charge that evening—then instructed the Physical Plant to activate the "fire evacuating ventilation system"

in order to reduce secondary exposure. *Id.* A Hazmat team cleaned the contaminated cells between 8:00 PM and 9:20 PM. *Id.* at Att. 2 at 60.

Because the air system was turned back on prematurely, Defendants King and Turner spoke with each inmate who had potentially been exposed to the OC/CS spray and offered them a shower and clean clothing. *Id.* at ¶ 8. Eight inmates—including Plaintiff—accepted Defendants' offer, and twelve refused. *Id.* SRCI records reflect that Plaintiff was offered a shower at 8:50 PM. King Decl. Att. 2 at 18. Though Plaintiff recalls being told by Defendant King that he was going to get a shower after they were done cleaning up, Plaintiff states he did not get a shower until after shift change at approximately 10:40 PM. First Walsh Decl. at 1. Defendant Turner escorted Plaintiff to a shower, which was set at a warm or hot temperature and caused him additional discomfort, like "lava" running down his body. *Id.* at 2; Third Walsh Decl. Ex. 10 (King Interrogatory Response No. 18). Plaintiff told the officer that it made his pain worse. First Walsh Decl. at 2. He asserts that the officer responded that "it usually does" because "the hot water opens your pores" and "intensifies and reactivates the spray." First Walsh Decl. at 2. The next morning, Defendant Aly offered Plaintiff another shower. Am. Compl. Ex. 2 (Second Walsh Decl.). Plaintiff requested a cold one, explaining that the hot water made the burning sensation worse. *Id.* Defendant Aly responded: "Hot is all you get, take it or leave it." *Id.* Plaintiff accepted because it was "better than nothing at all," but the shower reactivated the spray again, causing "everything" to continue to burn. *Id.*

Plaintiff asserts that he signed up for sick call the following day and explained that he was burning all night after receiving a shower. Second Walsh Decl. at 1. But his medical records do not reflect any requests to be seen by a medical provider in the two days following the incident. DiGiulio Decl. ¶ 5. Plaintiff did, however, send two inmate communication forms to

Health Services soon after the incident regarding his exposure. *Id.* at ¶ 6, Att. 1 at 5–6; *see also* Third Walsh Decl. Exs. 6–7. Months later, Plaintiff sent additional inmate communication forms to medical staff, seeking more information about decontamination with cool water after exposure to OC/CS spray. Third Walsh Decl. Ex. 5. Staff responded to Plaintiff that their nursing protocol for "Pepper Spray"—the protocol used by medical staff evaluating an inmate having a potentially adverse reaction to direct or secondary exposure to OC spray—recommends that inmates rinse their skin or eyes in cool water, blot eyes with a wet towel, and stay in a well-ventilated area. *Id.* at Exs. 1, 5, 12 (Landaverde Response to Interrogatory 4). The manufacturer of Sabre (a chemical agent) recommends decontaminating with cool, clean water. Third Walsh Decl. Exs. 2, 11 (King Admission 15),

On November 19 and 28, 2017, Plaintiff filed grievances regarding Defendants' delay in providing Plaintiff with decontamination and Defendants' failure to shut off the vents while administering the OC/CS spray. Third Walsh Decl. Exs 8, 24. Plaintiff appealed his grievances twice, exhausting the prison's grievance procedure. Am. Compl. 8. On January 19, 2018, Plaintiff filed this suit. Compl., ECF 2.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff alleges that in failing to shut off the ventilation system in his unit and provide him with decontamination within a reasonable amount of time after exposure to OC/CS spray, Defendants violated the Eighth Amendment. Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by

a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Plaintiff and Defendants both move for summary judgment. Defendants argue that Defendants Peters, Gower, Cain, Bell, Gilmore, Aly, and Landaverde (the "Supervisory Defendants") were not personally involved in the alleged constitutional deprivation and cannot be liable under a theory of *respondeat superior*. Defs. Mot. Summ. J. ("Def. Mot."), ECF 65. Defendants also argue that that Plaintiff's Eighth Amendment and joint conspiracy claims fail. *Id.* Plaintiff moves for partial summary judgment on his Eighth Amendment claim against Defendant King and his joint conspiracy claims against Defendants Peters, Gower, Bell, Cain, Gilmore, King, Turner, Aly and Landaverde. Pl. Mot. Summ. J. ("Pl. Mot."), ECF 50. Plaintiff also moves for sanctions against Defendants, alleging Defendants submitted a fraudulent document in support of their motion for summary judgment. Pl. Mot. Sanctions, ECF 80.

The Court denies Plaintiff's motions and grants in part and denies in part Defendants' motion. Issues of fact preclude granting Plaintiff's or Defendants' motions for summary judgment on the claims against Defendant King. In addition, a reasonable jury could conclude that Defendants Lyons, Scott, and Turner were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. Plaintiff, however, has not presented evidence that the Supervisory Defendants were involved in the alleged constitutional violation as required by § 1983 or that Defendants Peters, Gower, Bell, Cain, Gilmore, King, Turner, Aly and Landaverde were involved in a joint conspiracy to violate Plaintiff's constitutional rights. Accordingly, Defendants Peters, Gower, Bell, Cain, Gilmore, Aly and Landaverde are dismissed from this case.

7 – OPINION & ORDER

## I.     Eighth Amendment Claims Against Defendants King, Lyons, Scott & Turner

Plaintiff and Defendants both move for summary judgment on Plaintiff's Eighth Amendment claims. Plaintiff moves for summary judgment on his claim against Defendant King, arguing that Defendant King is liable for deliberate indifference under the Eighth Amendment because he failed to turn off the air vents during the deployment of OC/CS spray and failed to provide a shower to Plaintiff for over four and a half hours. Pl. Mot. 1. In moving for summary judgment on the claims against Defendants King, Lyons, Scott, and Turner, Defendants make two arguments. First, Defendants argue that Plaintiff cannot establish a claim for deliberate indifference under the Eighth Amendment against Defendants King, Lyons, Scott, and Turner. Def. Mot. 15–18. Second, Defendants argue that Defendants King, Lyons, Scott, and Turner are entitled to qualified immunity because a reasonable officer in their positions would not have believed that his actions were unlawful. *Id.* at 20–23.

### A.     Deliberate Indifference

A prison official violates an inmate's Eighth Amendment rights if they are "deliberately indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal citations omitted).

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050,

1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133

(9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials

deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in

which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974

F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "[m]ere

negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.

1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect

on the prisoner, but rather, upon the constraints facing the official." *Id.*

In *Clement v. Gomez*, bystander inmates were exposed to pepper spray vapors when

officers administered pepper spray in a neighboring cell to stop a violent fight. 298 F.3d at 902.

Prison officials did not provide the bystander inmates with decontamination showers until four

hours after the incident. *Id.* The defendants moved for summary judgment on the plaintiffs'

Eighth Amendment claims, arguing that they were not deliberately indifferent to the bystander

inmates' serious medical needs. *Id.* at 901. The Ninth Circuit first found that the plaintiffs'

submissions—which documented the painful effects of pepper spray—satisfied the objective

component of the Eighth Amendment test by demonstrating the presence of a serious medical

need. *Id.* at 904. The court then found that the plaintiffs might be able to show that the

defendants were subjectively aware of the risk of serious injury and therefore deliberately

indifferent in denying the plaintiffs showers and medical attention during the four-hour period.

*Id.* at 905. The court emphasized that the officers were coughing and stepped outside for fresh

air, and that the prisoners alleged that they made repeated requests for attention; were coughing,

gaging, and choking; and complained of breathing problems, pain, and asthma attacks. *Id.* at 905.
The court therefore concluded the defendants were not entitled to summary judgment on the
plaintiffs' Eighth Amendment claims.

As to the parties' cross motions for summary judgment on the Eighth Amendment claims
against Defendant King, the Court finds that there is an issue of fact as to whether Defendant
King was deliberately indifferent to Plaintiff's serious medical needs. Defendants note that
Defendant King: (1) took various precautions before the OC/CS spray was deployed; (2)
immediately requested that the ventilation system be turned off when he was informed—after the
last cell extraction—that the ventilation system had been turned on prematurely; and (3)
provided a shower and change of clothing to inmates who were impacted by secondary exposure
to the spray at 8:50 PM. Def. Mot. 16–17 (citing King Decl. ¶¶ 6–8). However, Plaintiff asserts
that he notified Defendant King of the issues with the ventilation system and his resulting
discomfort during each cell extraction and was ignored. First Walsh Decl. 1. And, viewing the
facts in the light most favorable to Plaintiff, Defendants failed to provide Plaintiff with a
decontamination shower until three hours after the last extraction and over four hours after the
cell extractions began. First Walsh Decl. 2. Accordingly, on this record there is an issue of
material fact as to Defendant King's knowledge of the risk of injury to Plaintiff and delay in
pursing any remedial actions thereafter. *See Clement*, 298 F.3d at 904 ("The officials . . . may
have been deliberately indifferent to the prisoners' serious medical needs if, in fact, they were
aware of the harmful effects of the pepper spray and of the inadequacy of their ventilation
methods and yet purposefully refused to provide showers, medical care, or combative
instructions or to develop an adequate policy to address obvious risks.").

Defendants also move for summary judgment on the claims against Defendants Lyons, Scott, and Turner, arguing that they were not deliberately indifferent to Plaintiff's serious medical needs. Though Defendants admit that "Defendants King, Lyons, Scott, and Turner may have been on notice that Plaintiff was impacted by secondary exposure to the OC spray deployed during the cell extractions," Defendants argue that they "were faced with competing concerns throughout the time that Plaintiff alleges that he was requesting a decontamination shower." Def. Mot. 17–18. But these competing concerns—specifically, the cell extraction—are documented by Defendant King, not Defendants Lyons, Scott, or Turner. *See id.* (citing King Decl. ¶¶ 5–7, 9). Moreover, there is no evidence that Defendants Lyons was involved in the cell extraction, *see* King Decl. Att. 2, and the alleged delay in providing Plaintiff a decontamination shower occurred three hours after the last cell extraction ended, First Walsh Decl. 1. Accordingly, whether these competing security concerns are sufficient to demonstrate that Defendants were not deliberately indifferent in delaying Plaintiff's decontamination after secondary exposure to OC spray is an issue for the jury.

B.      Qualified Immunity

Government officials may be entitled to qualified immunity for claims brought under § 1983. To determine whether a government official is entitled to qualified immunity, "[t]he court must first determine whether, examining the facts in the light most favorable to the plaintiff, the official violated the plaintiff's constitutional rights." *Barnes v. Gower*, No. 2:12-CV-01880-HZ, 2015 WL 736348, at *8 (D. Or. Feb. 17, 2015) (citing *Clement*, 298 F.3d at 903). Then, if the court finds the official violated the plaintiff's constitutional rights, it must determine "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). While "there must be some parallel or comparable factual pattern[,] . . . the facts of already decided

cases do not have to match precisely the facts with which [the government employer] is confronted." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) (citing *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008)).

First, as described above, a reasonable jury might conclude that Defendant King, Lyons, Scott, and Turner were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment. Second, when these Defendants are alleged to have violated Plaintiff's Eighth Amendment rights, Plaintiff's rights were clearly established. In *Clement*, the Ninth Circuit found that similar circumstances may have established a violation of the Eighth Amendment. *See Clement*, 298 F.3d at 905 (finding that when officers were coughing and gagging and opening the door to circulate air, and the inmates were repeatedly complaining to officers of breathing problems and pain, the inmates "may be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4 hour period"). Thus, viewing the record in the light most favorable to Plaintiff, a reasonable officer in Defendants' position would have understood it was unlawful to ignore Plaintiff's complaints of pain and deny Plaintiff reasonable decontamination after secondary exposure to chemical agents. Defendants King, Lyons, Scott, and Turner are therefore not entitled to qualified immunity.

## II.    Supervisory Defendants

Defendants move for summary judgment on the claims against the Defendants Peters, Gower, Cain, Bell, and Gilmore (the "Supervisory Defendants"),[1] arguing they should be dismissed from this case because Plaintiff has not shown that the Supervisory Defendants were

---

[1] As clarified in his response to Defendant's Motion for Summary Judgment, Defendants Aly and Landaverde "are only sued in conjunction with the alleged conspiracy claim with Defendants," not as supervisors. Pl. Resp. 3.

personally involved in the alleged constitutional violation.[2] "[F]or a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no *respondeat superior* liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

"A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)). Thus, "'[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th

---

[2] Defendants make additional arguments in support of their motion for summary judgment on the claims against the Supervisory Defendants. Because Plaintiff has failed to show that the Supervisory Defendants were personally involved in the alleged constitutional deprivation, the Court declines to reach the remainder of Defendants' arguments.

Cir. 1991) (internal citations and quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

For example, in *Clement*, the circuit court concluded that a failure to institute adequate prison policies can lead to liability where it "'reflects a deliberate or conscious choice' to 'follow a course of action . . . from among various alternatives.'" *Clement*, 298 F.3d at 905 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Specifically, the court held that the plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal citations and quotations omitted). On the record before it, the court found that a factfinder could find that the supervisors and policymakers were "on actual or constructive notice of the need to train," noting "[t]he plaintiffs' submissions recite[d] numerous instances of the use of pepper spray that allegedly harmed uninvolved bystander inmates." *Id.*

Here, Plaintiff concedes that his claims against Defendants Peters, Gower, Cain, Bell, and Gilmore are based on supervisory liability and argues that the Supervisory Defendants "can be held liable for conducting policies and procedures that are the moving force of a constitutional violation." Pl. Resp. 3. In support of his argument, Plaintiff points to his prior lawsuits against Defendants that resulted in a settlement. *See* Pl. Resp. 15 (citing *Walsh v. Peters, et. al.,* 2:15-cv-01012-MO and *Walsh v. Gower, et. al.* 2:16-cv-00904-MO); *see also* Third Walsh Decl. Exs. 22–23. He asserts that these lawsuits are evidence of Defendants' knowledge of the inadequate procedures, and Defendants subsequent failure to change these policy and procedures lead to the constitutional violation at issue in this case. *Id.*

Plaintiff, however, has not demonstrated that the Supervisory Defendants are liable for deliberate indifference. Plaintiff has not established that the Supervisory Defendants were on actual or constructive notice that their decontamination procedures were ineffective or harmful or that the training of their subordinates was inadequate. One of the lawsuits cited by Plaintiff involves inadequate decontamination after direct exposure to OC spray and therefore does not provide notice that Defendants' policies for decontamination after indirect exposure to chemical agents were constitutionally infirm. Third Am. Compl., *Walsh v. Peters, et. al.*, 2:15-cv-01012-MO, ECF 68. The second lawsuit does involve inadequate decontamination after indirect exposure to pepper spray, *see* Compl., *Walsh v. Gower, et. al.*, 2:16-cv-00904-MO, ECF 2, but the case ended with a settlement and did not proceed through summary judgment or trial, *see* Notice of Settlement, *Walsh v. Gower, et. al.*, 2:16-cv-00904-MO, ECF 23. Even viewing the facts in the light most favorable to Plaintiff, this single incident of allegedly inadequate decontamination does not establish that the Supervisory Defendants were on notice that their procedures, policies, or training for decontamination after secondary exposure were inadequate or unconstitutional. *Cf. Clement*, 298 F.3d at 905 (finding that the plaintiffs may have established that supervisors were on actual or constructive notice of the need to train in submitting "numerous instances of the use of pepper spray that allegedly harmed bystander inmates"). Without more, the Court finds that no reasonable jury could conclude that the Supervisory Defendants are liable for the alleged Eighth Amendment violation.

### III.   Civil Conspiracy Claims

Defendants and Plaintiff both move for summary judgment on Plaintiff's civil conspiracy claim. The crux of this claim is that Defendants Peters, Gower, Bell, Cain, Gilmore, King, Turner, Aly and Landaverde conspired to cause Plaintiff additional pain by not providing him

with a cool shower to decontaminate. Pl. Mot. 15–16; Am. Compl. 10 . "To establish . . . liability for a conspiracy [under § 1983], a plaintiff must demonstrate the existence of 'an agreement or "meeting of the minds" to violate constitutional rights,'" *Mendocino Evntl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989)), and "an actual deprivation of those rights resulting from the agreement," *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (quotations omitted). A jury may infer such a conspiracy or agreement from circumstantial evidence. *Mendocino Envtl. Ctr.*, 192 F.3d at 1301. "However, the evidence adduced must demonstrate more than the mere fact that two people did or said the same thing; the evidence must actually point to an agreement." *Myers v. City of Hermosa Beach*, 299 F. App'x 744, 747 (9th Cir. Nov. 7, 2008).

Plaintiff's evidence does not demonstrate that Defendants Peters, Gower, Bell, Cain, Gilmore, Turner, King, Aly, and Landaverde conspired to violate his constitutional rights. Plaintiff asks the Court to infer a meeting of the minds by pointing to: (1) the SRCI nursing protocols and instructions accompanying chemical agents recommending decontamination with cool water; and (2) Defendants' concurrent failure to provide cool showers for inmates exposed to chemical agents. Pl. Mot. 15–16. In light of this evidence, Plaintiff contends that subjecting Plaintiff and others to hot water can only be explained as a "malicious and sadistic act" by the supervisors to allow staff to inflict additional pain on inmates who have already been subjected to chemical agents. *Id.* at 17. But the disconnect between the nursing protocols and product instructions and the warm shower temperatures in the DSU does not, without more, demonstrate a meeting of the minds to violate the Eighth Amendment rights of adults in custody at SRCI.

Moreover, even if there was evidence of an agreement, Plaintiff cannot succeed on this Eighth Amendment claim against Defendants because Defendants are entitled to qualified immunity. *See Manda v. Albin*, 5:19-cv-01947-EJD, 2019 WL 6311380, at *6 n.5 (N.D. Cal. Nov. 25, 2019) ("[B]ecause the conspiracy is grounded in violations of the Fourth and Fourteenth Amendment, which the Court finds are barred by qualified immunity, the conspiracy charge is dismissed on these same grounds."). As briefly described above, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))."A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In making this determination, courts "'do not require a case directly on point'" to defeat a claim of qualified immunity, "'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)); *see also Greisen v. Hanken*, 925 F.3d 1097, 1108–09 (9th Cir. 2019). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)); *see also City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503 (2019).

Plaintiff alleges that Defendants engaged in a conspiracy to violate his Eighth Amendment rights by providing him with a hot or warm shower instead of a cold shower for decontamination after secondary exposure to OC spray. However, in *Garcia v. Pope*, the district court was presented with a similar Eighth Amendment claim and concluded that the defendants

were entitled to qualified immunity. 2:18-cv-01573-MC, 2020 WL 1068239, at *2 (D. Or. March 5, 2020). There, the plaintiff alleged that the defendants were deliberately indifferent to the plaintiff's health and safety when they exposed him to a warm-water decontamination shower. *Id*. at *1. The defendants argued that qualified immunity defeated the plaintiff's claim, and the court agreed, finding that "no controlling or even persuasive authority has held that warm-water decontamination showers constitute deliberate indifference." *Id*. at *2. The court further noted that "most courts addressing this issue have rejected claims of deliberate indifference arising from a warm or hot decontamination shower." *Id*. (citing cases from the Southern District of New York, Southern District of Ohio, District of Maryland, Western District of Virginia, Central District of California, Eastern District of Virginia, Eastern District of North Carolina, and the Southern District of California). And "[i]n the few cases denying qualified immunity, the inmates were subjected to additional conditions that exacerbated their pain and discomfort." *Id*. at *3 (citing cases from the Southern District of West Virginia and the Eastern District of California where the plaintiff was subjected to "excessively hot water" and was denied medical assistance or moved to solitary confinement without fresh clothing or bedding). Because the plaintiff in *Garcia* "[did] not allege any disregard to his health or safety aside from the warm water," was provided other methods of decontamination, and was not forced to take a shower, the court concluded that "it was not clearly established that [the] plaintiff's Eighth Amendment rights would be violated by exposure to a warm decontamination shower." *Id*. at *3.

As in *Garcia*, the hot-water shower claims are the sole deliberate indifference claims remaining against Defendants Peters, Gower, Bell, Cain, Gilmore, Turner, Aly and Landaverde. *See supra* Part II. At the time of the underlying incident, it was not clearly established that Plaintiff's Eighth Amendment rights would be violated by exposure to a hot or warm

decontamination shower. Accordingly, the Court finds that Defendants Peters, Gower, Bell, Cain, Gilmore, Turner, Aly, and Landaverde are also entitled to qualified immunity on Plaintiff's conspiracy claim.

## IV.    Motion for Sanctions

Plaintiff also moves for sanctions against Defendants, arguing that Defendants submitted a fraudulent document—a copy of a Chemical Agent Deployment form regarding Plaintiff's secondary exposure on November 18, 2017—in support of their Motion for Summary Judgment. Pl. Mot. Sanctions 1. In support of this contention, Plaintiff submits a response from an SRCI official stating that the record does not exist. *Id.* at Ex. 2. Defendants respond to Plaintiff's motion by explaining that the Chemical Agent Deployment Form is not a falsified document. Def. Resp. 2, ECF 82. Rather, the document was not located by the prison official because the Chemical Agent Deployment form is associated with an Unlawful Incident Report for the four adults in custody directly subjected to chemical agents and extracted from their cells that evening. Withem Decl. ¶¶ 4–5, ECF 83. Accordingly, it can be found in each of their files and is not included in Plaintiff's file. *Id.* Based on this evidence, it does not appear that this form was fabricated by Defendants. Accordingly, the Court denies Plaintiff's Motion for Sanctions.

///

///

///

///

///

///

///

19 – OPINION & ORDER

## CONCLUSION

The Court DENIES Plaintiff's Motion for Sanctions [80], DENIES Plaintiff's Partial Motion for Summary Judgment [50], and GRANTS in part and DENIES in part Defendants' Motions for Summary Judgment [65][85]. Defendants Peters, Gower, Bell, Cain, Gilmore, Aly, and Landaverde are dismissed from this case.

IT IS SO ORDERED.


Dated _____September 29, 2020_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge